UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ONIKA VAZQUEZ,

    Plaintiff,

v.                                                     Case No. 8:22-cv-960-MAP

COMMISSIONER OF SOCIAL SECURITY

    Defendant.
_____/

## ORDER

    Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI).[1] Plaintiff argues that the Administrative Law Judge (ALJ) committed reversible error by failing to properly consider her condition of hidradenitis suppurativa.[2] As the ALJ's decision was/was not based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    I.    *Background*

    Plaintiff, who was born in 1976, claimed disability beginning November 15, 2014 (Tr. 405, 412). She was 38 years old on the alleged onset date. Plaintiff obtained

---

[1] The parties have consented to my jurisdiction. *See* 28 U.S.C. § 636(c).
[2] "Hidradenitis suppurativa … is a condition that causes small, painful lumps to form under the skin. The lumps usually develop in areas where your skin rubs together, such as the armpits, groin, buttocks and breasts. The lumps heal slowly, recur, and can lead to tunnels under the skin and scarring." Mayo Clinic, *Hidradenitis suppurativa*, https://www.mayoclinic.org/diseases-conditions/hidradenitis-suppurativa/symptoms-causes/syc-20352306 (last visited July 26, 2023).

at least a high school education, and her past relevant work experience included work as a receptionist, a medical assistant, and a child monitor (Tr. 60, 452). Plaintiff alleged disability due to bipolar affective disorder, depression, panic disorder, hidradenitis, and a problem with her glands (Tr. 451).

Given her alleged disability, Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 405-18). The Social Security Administration (SSA) denied Plaintiff's claims both initially and upon reconsideration (Tr. 122-83, 214-66). Plaintiff then requested an administrative hearing (Tr. 267-68). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 66-100). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 184-205). Upon Plaintiff's timely request for review, the Appeals Council vacated the ALJ's decision and remanded the case back to an ALJ to fully evaluate various medical records not previously considered (Tr. 206-11). On remand, the ALJ conducted a second hearing (Tr. 33-65), after which she issued an unfavorable decision denying Plaintiff's claim for benefits (Tr. 10-32).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through June 30, 2020, and had not engaged in substantial gainful activity since November 15, 2014, the alleged onset date (Tr. 15). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: hidradenitis suppurativa, thoracic degenerative disc disease, obesity, depression, anxiety disorder, bipolar disorder, and

panic disorder (Tr. 16).  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16-17).  The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to perform light work with the following limitations:

> she can occasionally lift and/or carry 20 pounds and she can frequently lift and/or carry 10 pounds; she can sit for a period of 6 hours, stand for a period of 6 hours, walk for a period of 6 hours, and push/pull as much as she can lift/carry; she can frequently operate foot controls and hand controls bilaterally; she can frequently reach overhead and all other reach bilaterally; she can occasionally climb ladders, ropes, or scaffolds; she is limited to frequent exposure to unprotected heights, moving mechanical parts, humidity/wetness, extreme cold, extreme heat, and vibration; she is limited to performing simple and routine tasks as defined by the DOT as SVP level 1 or 2, with a reasoning level no greater than 2; she can have occasional contact or interactions with coworkers, supervisors, and the general public; and she can maintain attention, concentration, persistence, and pace in 2 hour increments throughout an 8 hour workday with normal work breaks.

(Tr. 19).  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 20).

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could not perform her past relevant work (Tr. 23).  Given Plaintiff's background and RFC, the VE testified that Plaintiff

could perform other jobs existing in significant numbers in the national economy, such as a cleaner/housekeeper, a marker, and a routing clerk (Tr. 24-25, 61-63). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 25). Given the ALJ's finding, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 402-04). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

    II.    *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged

in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.[3] *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference

---

[3] In her Memorandum, Plaintiff argues that the ALJ failed to provide "clear and convincing reasons to reject Plaintiff's subjective symptom testimony" (Doc. 17, at 8). As the Commissioner contends, however, a clear and convincing standard does not apply to Plaintiff's appeal of the denial of her disability benefits. Rather, the question is whether substantial evidence supported the ALJ's decision.

is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

### III.   Discussion

Plaintiff argues solely that the ALJ erred by failing to properly consider her hidradenitis suppurativa condition and her subjective complaints related thereto. According to Plaintiff, the ALJ erroneously assumed that, if Plaintiff did not experience active symptoms at the time of her doctor's appointment, Plaintiff did not have symptoms. Further, Plaintiff asserts that the ALJ's RFC finding did not make sense nor account for limitations Plaintiff would experience with reaching and sitting

or whether the limitations applied every day or only when Plaintiff had flare-ups of hidradenitis suppurativa in her armpits or groin.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other

factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms,[4] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). Rather, to establish a disability based on testimony of pain and other symptoms, the claimant must establish evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225. Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the SSA determines that an underlying physical or mental impairment could reasonably be expected to produce

---

[4] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i), 416.902(n).

the claimant's symptoms, the SSA evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-9. When the ALJ does not find the claimant's subjective testimony supported by the record, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell*, 771 F.3d at 782.

Here, the ALJ clearly articulated her findings regarding Plaintiff's hidradenitis suppurativa impairment and Plaintiff's subjective complaints related thereto. Namely, at step two, the ALJ found Plaintiff's hidradenitis suppurativa constituted a severe impairment (Tr. 16). Thereafter, the ALJ explicitly considered whether Plaintiff's impairment met or medically equaled the criteria for Listing 8.06 for hidradenitis suppurativa, concluding that it did not (Tr. 16-17).[5] In setting forth the RFC, the ALJ discussed Plaintiff's subjective complaints regarding her hidradenitis suppurativa, stating that Plaintiff reported developing frequent boils in varying sizes in her groin, buttocks, and armpits because of her hidradenitis suppurativa flare-ups, and during

---

[5] The Listing of Impairments describes, for each of the major body systems, impairments considered severe enough to prevent an individual from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). The Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary and thus require an impairment preventing an adult from performing *any* gainful activity rather than just substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Indeed, conditions found in the Listings are "irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform her past relevant work or any other jobs." *Richardson v. Apfel*, 44 F. Supp. 2d 1264, 1265 (M.D. Fla. 1998) (citations omitted).

such flare-ups, Plaintiff found it difficult to reach, use her arms, and perform postural activities (Tr. 20, 40-51). As the ALJ noted, Plaintiff also reported that she suffered from fatigue and needed to lie down and, when particularly worse, needed to have a dermatologist lance or drain her boils (Tr. 20-21, 40-51).

The ALJ then discussed Plaintiff's treatment history for hidradenitis suppurativa, concluding that the medical evidence was inconsistent with the severity of Plaintiff's allegations (Tr. 21-22). As the ALJ stated, the records reflected a history of hidradenitis suppurativa for about 20 years since the excision of her glands at her axilla and groin in 2006 with no active treatment as of February 2018 but with a continuing diagnosis of hidradenitis suppurativa thereafter (Tr. 21, 843). The ALJ recognized that Plaintiff presented to her primary care appointments with intermittent lesions and some swelling but without drainage for the most part and with conservative treatment by medication (Tr. 21, 764-815, 1032-73, 1140-56).

Plaintiff presented to Dr. Robert Norman upon referral in February 2018, to establish as a new patient (Tr. 21, 843-44). As the ALJ explained, Dr. Norman's treatment notes indicate that, although Plaintiff reported some painful flare-ups and intermittent erythema and Dr. Norman noted lesions, Plaintiff showed full movement of all extremities and mostly intact skin with no active lesion activity and conservative treatment by medication, ointment, special soap, and recommendation of smoking cessation (Tr. 21, 843-78, 1077-1087, 1122-28, 1161-73). For example, in March 2019, Plaintiff reported to Dr. Norman improvement with medication and special soap, topical creams, ointments, and solutions (Tr. 861). At that time, Dr. Norman

indicated that Plaintiff understood she would never recover fully from the hidradenitis suppurativa if she continued to smoke (Tr. 21, 862). Plaintiff continued to demonstrate no flares or active lesions as of June 2019 (Tr. 864-66). Following that, in October 2020, Plaintiff reported to Dr. Norman that she experienced a breakout of hidradenitis suppurativa for two weeks but presented with no active lesions (Tr. 1084-86). Later, in January 2021, Plaintiff saw Dr. Norman for a follow-up appointment to obtain medication refills, indicating that she experienced pain when her hidradenitis suppurativa flared up but that her condition had improved and that her symptoms were mild at that time, while showing no active lesions (Tr. 1125-27, 1166-68). Similarly, in June 2021, Plaintiff presented to Dr. Norman for medication refills indicating that, while her symptoms were chronic, they had improved and were mild, with no active lesions found (Tr. 1170-73).

  As the foregoing indicates, the ALJ clearly articulated her findings regarding Plaintiff's hidradenitis suppurativa, adequately considering Plaintiff's flare-ups and any associated pain, symptoms, and treatment. The ALJ included the limitations in the RFC that she found supported by the record to account for Plaintiff's subjective complaints regarding the hidradenitis suppurativa. She also posed a hypothetical to the VE encompassing the limitations set forth in the RFC and received confirmation from the VE that an individual with such limitations maintained the ability to perform jobs existing in significant numbers in the economy. She therefore provided substantial evidence in support of her findings and applied the correct legal standards.

Notwithstanding, Plaintiff takes issue with the ALJ's purported grammatical error in stating that Plaintiff "can frequently reach overhead and all other reach bilaterally" when setting forth the RFC (Doc. 17, at 9; Tr. 19, 23). During the hearing, however, the ALJ posed hypotheticals to the VE incorporating manipulative limitations for "frequent bilateral overhead and all other reach" (Tr. 61-63). In response to the second hypothetical, the VE indicated that, with all the limitations identified, including the manipulative limitations, Plaintiff could perform the jobs of a cleaner/housekeeper, a marker, and a routing clerk (Tr. 61-63). Plaintiff thus fails to demonstrate that she suffered any unfairness or clear prejudice relating to the limitations set forth by the ALJ in the RFC that would warrant remand. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("Remand for further factual development of the record before the ALJ is appropriate where the record reveals evidentiary gaps which result in unfairness or clear prejudice.") (internal quotation and citation omitted); *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (stating that the claimant must show some prejudice before a court will find that a claimant's due process has been violated to such a degree to order a remand to the Commissioner for further development of the record).

Moreover, to the extent that Plaintiff asks me to reweigh the evidence or substitute my opinion for that of the ALJ, I cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *See Mitchell*, 771 F.3d at 782; *Bloodsworth*, 703 F.2d at 1239.

"And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). To reiterate, I may not reweigh the evidence or substitute my own judgment for that of the ALJ, even if I find the evidence preponderates against the ALJ's decision. *See Mitchell*, 771 F.3d at 782; *Bloodsworth*, 703 F.2d at 1239.

IV.     Conclusion

For the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence. Accordingly, it is hereby

ORDERED:

1.     The decision of the Commissioner is AFFIRMED.

2.     The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 26th day of July, 2023.

_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:     Counsel of Record